106 F.3d 407
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Patrick Bruce DURAN, Petitioner-Appellant,
v.
Otis THURMAN, Warden of the Los Angeles County State Prison,
Lancaster, California, Respondent-Appellee.
 No. 96-15213.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 11, 1996.
Decided Jan. 23, 1997.
As Amended on Denial of Rehearing and Suggestion for
Rehearing En Banc April 24, 1997.
 
 Before: FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Patrick Bruce Duran was convicted of second-degree murder in California Superior Court. Duran filed a petition for a writ of habeas corpus in United States District Court, pursuant to 28 U.S.C. § 2254, which challenged his state court conviction as having been obtained in violation of his federal constitutional rights. The district court denied his petition and Duran appeals. We have jurisdiction pursuant to 28 U.S.C. § 2253 and we reverse.
 
 FACTS
 
 3
 No one doubts that Duran killed the victim Charles Blow and that they were strangers to one another. What is in doubt is whether Duran was acting in self defense. On the night of January 18, 1990, around midnight, Duran, after walking with his partner, Jack Tolson, to see a friend to her car, proceeded to walk his pit bulls, first one then the other. He testified that near the intersection of Haight and Webster streets, close to his home, he was struck "breast-to-breast" by a man he now knows to be the victim, and was knocked to the ground. He lost track of "space and time." He found himself in a rolling motion on the sidewalk on all fours. Blow grabbed him in an aggressive manner as he tried to get up. Duran testified that Blow held up a knife. Duran feared for his life and managed to take the knife away. He did not remember how this happened, but recalled stabbing Blow.
 
 
 4
 He testified that he then became aware that another man, Malcolm Joseph, was present. According to Duran, Joseph stated, "That's my partner, you can't do that." Duran believed he was under attack by two men. Blow was still grabbing at Duran, so Duran stabbed him again. Duran then broke loose and Blow fell backward and did not get up. Joseph said, "You can't do that, he was only trying to mug you." Duran responded, "The guy tried to kill me, what was I supposed to do?" Duran then grabbed his dog's leash and left. He warned another man walking his dog that he had just been mugged and returned to Tolson and his friend at her car. The next morning he turned himself in to the police.
 
 
 5
 Several witnesses testified to their imperfect observation of events. None of the witnesses saw the knife, which was never found. Some of the accounts suggested self-defense. None of the accounts was inconsistent with self-defense on the part of Duran, except, possibly Joseph's. However, even Joseph conceded that Blow might have been attempting to mug Duran.
 
 DISCUSSION
 
 6
 We review a district court's decision to deny a § 2254 petition for habeas corpus de novo. Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir.), cert. denied, 117 S.Ct. 588 (1996). We review the district court's findings of fact for clear error, and presume that the findings of fact made by the state court are correct. Moran v. McDaniel, 80 F.3d 1261, 1268 (9th Cir.1996).
 
 
 7
 To determine whether habeas relief should be granted, we must determine first whether trial errors occurred. If we find that errors occurred, we must then determine whether the errors were harmless, i.e., whether they "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). We conclude that many errors occurred at Duran's trial and that cumulatively these errors deprived Duran of his right to a fair trial.
 
 A. Trial Errors
 1. Brady violation
 
 8
 Duran claims that the prosecution violated Brady v. Maryland, 373 U.S. 83, 87 (1963), because it failed to disclose that at the time of trial Malcolm Joseph, a key prosecution witness, had a pending misdemeanor drug case against him. We agree.
 
 
 9
 To prove a Brady violation, a defendant must show that the Government (1) failed to disclose, (2) evidence that was material to the defense.
 
 
 10
 a. Failure to Disclose
 
 
 11
 Duran's trial counsel stated in sworn, uncontested declarations submitted to both the district court and the state trial court that she was not aware of the pending charge against Malcolm Joseph at the time of Duran's trial. When trial counsel asked about Joseph's arrest, the prosecutor told her that Joseph "did not have a case pending and his only charges had been dismissed" and that Joseph's arrest was erroneous because the substance found on him was not narcotics but "bunk." There is absolutely no evidence in the record that contradicts trial counsel's sworn statement that she had been told that the charge against Joseph was erroneous and had been dismissed, and that she had not been told about the pending misdemeanor charge. Therefore, the state court's, and the district court's, finding that trial counsel was aware before trial that Joseph was in jail on a drug charge was clearly erroneous, and not based on the evidence in the record.
 
 
 12
 The State argues that trial counsel should have known of the pending criminal charges and therefore it did not have a duty to disclose the information. We reject this argument.
 
 
 13
 Trial counsel was informed by the prosecution that the charges against Joseph had been dismissed, and that the charges were erroneous because they involved "bunk." Trial counsel was entitled to believe the prosecution's representations, and should not be required to inquire as to the truthfulness of the representations.
 
 
 14
 b. Materiality
 
 
 15
 Evidence is "material" under Brady "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. To satisfy the materiality standard, a defendant need not show that he would have been exonerated if the material had been disclosed; he need only show that there is a reasonable likelihood that the degree of conviction would have been lower. Cf. Hill v. Lockhart, 474 U.S. 52, 59 (1985) (holding, in context of ineffective assistance challenge to guilty plea, that a defendant need only show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").
 
 
 16
 Based on the facts in the present case, there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. Joseph was a key prosecution witness. The prosecution characterized Joseph as a good samaritan who came to Blow's aid, attempted to call attention to Duran's crime, and remained on the street to assist the police. Duran's defense was that Blow attacked him without provocation, probably to rob him, and that Blow appeared to have a prior history of such conduct. Duran also testified that when Joseph approached him, Duran feared that Joseph was a second assailant.
 
 
 17
 Joseph was the only witness whose testimony about the incident directly contradicted Duran's defense of self-defense or imperfect self-defense. Thus, the jury's determination of Joseph's credibility was central to the case. Evidence of Joseph's arrest and pending criminal charge would have likely reduced Joseph's credibility and therefore made it more likely that the jury would believe Duran's theory of the case. If the jury believed Duran's theory of the case, it is likely that it would have either acquitted Duran or found him guilty of manslaughter instead of second-degree murder. Thus, there is a reasonable probability that, had the evidence been disclosed, the "result of the proceeding would have been different." Bagley, 473 U.S. at 682. The evidence was therefore material and the Government's failure to disclose the evidence deprived Duran of his right to a fair trial.
 
 2. Reference to Duran's Post-Arrest Silence
 
 18
 Duran engaged an attorney prior to turning himself in to the police the morning after the killing. Upon advice of his attorney, Duran declined to answer questions by the investigating officers upon arrest. At trial, the prosecutor elicited an admission from Duran that he had not made a statement to the police when he turned himself in. This reference by the prosecutor to Duran's post-arrest silence constitutes error. See Doyle v. Ohio, 426 U.S. 610, 618-19 (1976).
 
 
 19
 However, the State argues that Duran's direct testimony implies that Duran cooperated fully with the police investigation by giving an exonerating statement and that this implication opened the door to cross-examination to rebut the implication. We reject this argument.
 
 
 20
 On direct examination, Duran's only relevant statements were: (1) "I surrendered to the police in [my counsel's] presence on the 19th [of January]"; and (2) "I knew the police wanted to interview me the next morning at 9:00 and that [my counsel] wanted to be there for me, with me.... I was told that the police had agreed to let me have a quiet night and that we could do everything in the morning." Duran never stated, or implied, that he gave a statement to the police. The prosecutor's reference to his refusal to give a statement was therefore improper rebuttal and constituted prosecutorial misconduct.
 
 3. Reference to Duran's Incarceration
 
 21
 During re-direct examination of prosecution witness Jack Tolson, Duran's domestic partner, the prosecutor asked, "how often did you visit Mr. Duran, let me ask you, how often have you visited him since this incident took place?" Defense counsel objected to this line of questioning, but the objection was overruled. Tolson testified that he had visited Duran "several times a week." During cross-examination of defense witness Terry Keyser, who stated that she was "a very close friend" of Duran, the prosecutor asked, "and have you talked to him in jail since he has been in custody?" Defense counsel did not object to the question. Finally, in closing argument, the prosecutor characterized the defense argument as a call to allow Duran to go home: "You should allow him to go home whenever you return your verdict, because what he did, any reasonable person in a like situation would do." Again, defense counsel did not object.
 
 
 22
 Duran argues that these questions and statement by the prosecutor constituted prosecutorial misconduct in that they informed the jury that Duran was incarcerated prior to trial and created an inference that Duran was probably guilty of the offense or was a violent person who needed to be incarcerated. We agree and hold that the prosecution's reference to Duran's incarceration constituted prosecutorial misconduct.
 
 
 23
 4. Reference to Duran's Refusal to Provide Blood and Urine Samples
 
 
 24
 The prosecution informed the jury two different times that Duran declined to provide blood and urine samples to the police when he turned himself in. It is undisputed that no warrant had been issued authorizing the taking of the samples. Therefore, Duran's passive refusal to consent to the warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing. See Winston v. Lee, 470 U.S. 753, 760-61 (1985); Schmerber v. California, 384 U.S. 757, 768-71 (1966); United States v. Prescott, 581 F.2d 1343, 1351 (9th Cir.1978). The prosecution's repeated reference to Duran's refusal to provide blood and urine samples violated Duran's Fourth Amendment rights.
 
 5. Erroneous Jury Instructions
 
 25
 At the end of trial, counsel and the trial court conferred about jury instructions, and the court agreed to give a modified version of CALJIC Nos. 5.13, 5.14, and 5.16. These instructions explain that homicide is justifiable when committed by any person in his defense if he honestly and reasonably believed that the individual intended to commit a forcible and atrocious crime (such as murder, rape, mayhem, or robbery) and that there was imminent danger of such crime being accomplished. The instructions explain that actual danger is not required so long as the person reasonably believes there is such a danger. The trial court failed to deliver these instructions, either orally or in writing, and trial counsel failed to point out the omission to the court. We hold that the trial court's omission of these agreed upon instructions was erroneous.
 
 
 26
 We disagree with the district court that CALJIC 5.12 incorporates the essentials of 5.13, 5.14 and 5.16 and that the jury was therefore adequately instructed on Duran's theory of self-defense. The record contained evidence that Blow possibly intended to rob or murder Duran; part of Duran's theory of defense was self-defense against those crimes. CALJIC 5.12 does not clearly define the level of apprehension required of the defendant, nor state that killing another in self-defense is justified when the individual killed intended to commit a forcible and atrocious crime, nor define what such a crime might be, or that robbery is specifically included. The jury was never instructed that Duran was justified in using deadly force if he reasonably believed he was being robbed, even if he were mistaken. Based on CALJIC 5.12 alone, the jury might have incorrectly concluded that to acquit it must find that Duran feared death or great bodily harm.
 
 
 27
 That the jury was otherwise instructed on self-defense to an assault (CALJIC 5.30, 5.31) and on other aspects of self defense (CALJIC 5.15, 5.17, 5.50, 5.51, 5.52, 5.53), does not cure the error of the trial court's omission of the other agreed upon instructions.
 
 6. Ineffective Assistance of Counsel
 
 28
 To determine whether trial counsel's performance was deficient we must determine whether counsel's representation fell below an objective standard of reasonableness considering all the circumstances under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 688 (1984). Although we must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, id. at 689, we hold that counsel's performance here was not within that range.
 
 
 29
 a. Failure to Adequately Investigate
 
 
 30
 Duran argues that trial counsel's failure to investigate the meaning of the victim's toxicology report rendered her assistance ineffective. We agree.
 
 
 31
 The evidence at trial showed that Blow suffered from paranoid-type schizophrenia and had engaged in incidents of assaultive conduct. The evidence also indicated that Blow had been taking medication, principally "Narvane," to control his condition.
 
 
 32
 The coroner who performed Blow's autopsy testified that she did not know whether the antipsychotic medication Narvane would be detected by the blood test that she had performed. The prosecution argued that, based on this testimony, the jury must assume that Blow had been taking his antipsychotic medication. Trial counsel did not investigate whether Narvane would be detected.
 
 
 33
 After trial it was discovered that Narvane would have been detected by the blood test performed on Blow. If this evidence had been presented at trial, the jury would have had medical proof that Blow was not taking his antipsychotic medication. From this, the jury could have inferred that Blow's paranoid-type schizophrenia and homicidal tendencies were not being controlled. This evidence would have bolstered Duran's claim of self-defense.
 
 
 34
 Trial counsel's failure to conduct any investigation whatsoever of the meaning of the coroner's toxicology report to determine whether the antipsychotic drug Narvane would be detected by the blood tests performed on Blow fell below the required reasonable standard of competency. See id. at 689.
 
 
 35
 b. Failure to Object to Certain Evidence
 
 
 36
 Duran claims that trial counsel's performance was deficient because she failed to object to the prosecutor's elicitation of evidence regarding Duran's post-arrest silence, his incarcerated status, and his failure to provide blood and urine samples. As previously concluded, the prosecutor's elicitation of this evidence constituted error. Moreover, trial counsel's failure to object to the elicitation of this objectionable evidence fell below the required reasonable standard of competency. See id.
 
 
 37
 c. Failure to Object to Trial Court's Omission of Jury Instructions
 
 
 38
 As previously concluded, the trial court's failure to give the modified version of CALJIC Nos. 5.13, 5.14, and 5.16 as jury instructions was erroneous. These instructions were essential to the defense's theory of the case. Trial counsel's failure to point out the omission of these instructions or object to the omission fell below the required reasonable standard of competency. See id.
 
 7. Other Alleged Deficiencies
 
 39
 We have considered and rejected Duran's contention that the following also constitute reversible trial error: 1) the district court's reinstruction error on malice and malice aforethought; 2) trial counsel's failure to discover Blow's mental hygiene records; 3) trial counsel's failure to object to testimony and argument regarding the process by which Roeling identified Blow; 4) trial counsel's failure to object to the testimony of Patricia Bailey; and 5) trial counsel's alleged failure to adequately present Duran's defenses; and 5) trial counsel's presentation of evidence of Duran's agitated and disturbed mental state.
 
 B. Effect of Trial Errors
 
 40
 We need not determine whether each of the above errors alone meet the "substantial and injurious effect or influence" standard because we conclude that the errors, when considered cumulatively, deprived Duran of his right to a fair trial. See Harris v. Wood, 64 F.3d 1432, 1438 (9th Cir.1995); Mak v. Blodgett, 970 F.2d 614, 622 (9th Cir.1992), cert. denied, 507 U.S. 951 (1993).
 
 
 41
 The errors that occurred at trial include the following: the prosecutor failed to disclose that a key prosecution witness had criminal charges pending at the time of trial; the prosecutor referred to Duran's post-arrest silence; the prosecutor referred to Duran's incarceration; the prosecutor referred to Duran's refusal to provide blood and urine samples; the trial court erroneously omitted jury instructions on justifiable homicide; trial counsel failed to conduct an adequate investigation of the case and discover evidence essential to the theory of defense; trial counsel failed to object to the prosecution's reference to Duran's post-arrest silence, incarceration and refusal to provide blood and urine samples; and trial counsel failed to object to the trial court's failure to instruct the jury on justifiable homicide.
 
 
 42
 These errors, considered cumulatively, had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. The district court's denial of Duran's petition for habeas corpus was therefore erroneous.
 
 CONCLUSION
 
 43
 Because the trial errors, considered cumulatively, had a substantial and injurious effect or influence on the jury's verdict, we reverse the district court's denial of the petition for a writ of habeas corpus and remand with instructions to issue the writ and order Duran's release unless the State, within a reasonable time to be established by the district court, decides to retry Duran.
 
 
 44
 REVERSED and REMANDED with instructions.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3