151 F.3d 1170
 98 Cal. Daily Op. Serv. 5877, 98 Daily Journal
D.A.R. 8231,
98 Daily Journal D.A.R. 9244
Manuel Pina BABBITT, Petitioner-Appellant,
v.
Arthur CALDERON, Warden, Respondent-Appellee.
 No. 97-99011.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 20, 1998.
Decided July 30, 1998.
Amended Aug. 27, 1998.
 
 Jessica K. McGuire, Deputy State Public Defender, Sacramento, California, and David S. Winton, Pillsbury Madison & Sutro, Los Angeles, California, for Petitioner-Appellant.
 Mathew Chan and Raymond L. Brosterhous II, Deputy Attorneys General, Sacramento, California, for Respondent-Appellee.
 Appeal from the United States District Court for the Eastern District of California; William B. Shubb, District Judge, Presiding. D.C. No. CV-89-01047-WBS.
 Before: HALL, BRUNETTI and THOMPSON, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Appellant Manuel Pina Babbitt appeals the district court's order granting the state's motion for summary dismissal of Babbitt's petition for writ of habeas corpus. The district court had jurisdiction under 28 U.S.C. § 2254. This court has jurisdiction under 28 U.S.C. §§ 2253 and 2254, and we affirm.
 
 
 2
 * Appellant Manuel Pina Babbitt was found guilty of the first degree murder of Leah Schendel after she died of heart failure during his burglary, robbery, and attempted rape. He was also convicted of the robbery and attempted rape of Mavis Wilson.
 
 
 3
 During his trial, Babbitt relied on a mental-state defense, presented through the testimony of family members and medical experts. Babbitt's brother William testified about Babbitt's deteriorating mental condition after his military service in Vietnam. Babbitt's common-law wife Theresa also testified about his often strange behavior. Dr. Joan Blunt, a licensed clinical psychologist, testified that Babbitt had mild brain damage and was unable to harbor malice aforethought or form the intent to steal or commit rape. Dr. Blunt based her conclusions in part on a diagnosis of Post Traumatic Stress Disorder (PTSD) stemming from Babbitt's Vietnam experiences. Dr. Allen David Axelrad testified during the sanity phase of the trial that Babbitt had been experiencing a PTSD-induced disassociative state-in which Babbitt was reliving his prior traumatic experiences-during both crimes.
 
 
 4
 The state offered its own expert testimony refuting this and other testimony presented by Babbitt. On April 20, 1982, Babbitt was found guilty by a California jury. On May 8, 1982, Babbitt was found sane. On July 6, 1982, Babbitt was sentenced to death.
 
 
 5
 Babbitt exhausted his state habeas appeals. He then brought the present habeas action in federal district court.
 
 II
 
 6
 Babbitt first argues that his counsel provided ineffective assistance during the guilt, sanity, and penalty phases of his trial. This claim centers around the contention that his counsel failed to investigate and present evidence related to a PTSD defense, the theory of which was that Babbitt's crimes were committed during a PTSD-induced disassociative state. He also claims that counsel introduced other theories of mental illness that made the PTSD defense less credible, elicited damaging testimony from his own expert witness without attempting to mitigate the impact, and failed to conduct a life and family history investigation in order to present mitigating evidence during the penalty phase.
 
 
 7
 In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Babbitt must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
 
 A. Guilt and Sanity Phases
 1. Counsel's Performance
 
 8
 There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 689, 104 S.Ct. 2052. In other words, as this court has recently emphasized, "the relevant inquiry under Strickland is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir.1998) ("Siripongs II "), petition for cert. filed (U.S. May 21, 1998) (No. 97-9175). While a lawyer is under a duty to make reasonable investigations, a lawyer may make a reasonable decision that particular investigations are unnecessary. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052. To determine the reasonableness of a decision not to investigate, the court must apply "a heavy measure of deference to counsel's judgments." Id.
 
 
 9
 Babbitt makes several arguments predicated upon showing what defense counsel could have presented, rather than upon whether counsel's actions were reasonable. Babbitt first offers the depositions of various Vietnam veterans to show what evidence counsel could have presented, but it was not unreasonable for counsel not to pursue such testimony when it was largely cumulative of the testimony about Vietnam offered by Dr. Axelrad. See Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir.1995) (noting that "the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed ...") (citation omitted); United States v. Schaflander, 743 F.2d 714, 719 (9th Cir.1984) (holding that defendant's counsel had no obligation to present cumulative evidence). While Dr. Axelrad's testimony might have lacked the emotional power of the testimony of veterans, counsel could reasonably have decided to utilize his limited resources in investigating other avenues rather than simply bolstering this one. See Hensley v. Crist, 67 F.3d 181, 185 (9th Cir.1995) ("Tactical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel."). This is especially true given Babbitt's own reluctance to talk about Vietnam, which would have made further investigation more costly and time-consuming.
 
 
 10
 Counsel's failure to consult with certain PTSD experts whom appellate counsel names in his brief was not unreasonable, either, because counsel did retain medical experts whom he thought well-qualified. The experts he had retained did not state that they required the services of these additional experts. There was no need for counsel to seek them out independently. See Hendricks, 70 F.3d at 1039 (holding that the Constitution does not "require an attorney, without interdisciplinary guidance, to provide a psychiatric expert with all information necessary to reach a mental health diagnosis").
 
 
 11
 Counsel's failure to uncover Babbitt's alleged family history of mental illness was also not unreasonable. Counsel's investigator did speak with Babbitt's family members and friends and others who might have had such information, but none of them indicated there was any history of mental illness in Babbitt's family. Other courts have held that "counsel is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence." Matthews v. Evatt, 105 F.3d 907, 920 (4th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997). This comports with the principle that a lawyer may make reasonable decisions that render particular investigations unnecessary.
 
 
 12
 Babbitt makes two other arguments for deficient performance that are also unavailing. First, he argues that counsel was ineffective because his expert was not qualified to make certain diagnoses and because his experts presented conflicting testimony. However, while there may be a duty to seek out psychiatric evaluation of a client where appropriate, there is no duty to ensure the trustworthiness of the expert's conclusions. See Hendricks, 70 F.3d at 1039. While presenting differing versions of mental deficiency (in this case, both PTSD and temporal lobe epilepsy) may end up confusing a jury, such a strategy may be sound where neither version is considered wholly satisfactory. See Wade v. Calderon 29 F.3d 1312, 1318 (9th Cir.1994) (calling one mental health expert whose diagnosis conflicted with the diagnosis of other experts was not prejudicially ineffective where the testimony of all experts was favorable to the defendant).
 
 
 13
 Second, Babbitt argues that his counsel allowed damaging testimony of his arrest for assaulting a prostitute named Barbara Jenkins to be disclosed by Dr. Axelrad without attempting to mitigate its impact. However, this testimony was considered by Dr. Axelrad in forming his opinion of Babbitt's mental condition. Thus, counsel could not have hidden this incident. See Cal. Evid.Code § 721 (stating that an expert witness may be fully cross-examined as to the basis for his or her opinion). Furthermore, eliciting additional details of the incident would have been highly prejudicial given the inflammatory nature of what Jenkins would have revealed.
 
 
 14
 Thus, counsel's performance during the guilt and sanity phases was not Constitutionally deficient.
 
 2. Prejudice
 
 15
 Even if counsel's performance were deficient during the guilt and sanity phases, Babbitt cannot show prejudice.
 
 
 16
 First, Babbitt argues that the failure to obtain the testimony of Vietnam veterans prejudiced the trial against him. However, as noted above, Dr. Axelrad did present testimony about Vietnam during his discussion of Babbitt's mental health, so the testimony of veterans would have largely been cumulative. See Schaflander, 743 F.2d at 718 (holding that appellant failed to show prejudice where his newly profered evidence was cumulative of the evidence already presented at trial). Babbitt argues that the veterans' testimony could have served to corroborate the testimony of Dr. Axelrad, whose reliability was challenged in the trial. However, it was undisputed that Babbitt's service in Vietnam was traumatic. The issue was whether this trauma caused him to suffer PTSD and whether he was in a PTSD disassociative state when he committed his crimes against Leah Schendel and Mavis Wilson. The Vietnam veterans could not have provided direct corroboration on this issue.
 
 
 17
 Second, Babbitt argues that counsel's unreasonable reliance on Dr. Blunt's unsupported and contradictory explanations of his mental disorders prejudiced the outcome of the trial. However, Babbitt bases this argument on the unsupported assertions that Dr. Blunt's alternative explanation of temporal lobe disorder "misdirected the jury's attention away from the only mental state defense that truly could have succeeded, namely, a defense based on PTSD" and that Dr. Blunt's testimony "invited" the prosecutor's argument that all psychiatric testimony in support of mental state defenses are inherently unreliable. As to the first point, even if a PTSD defense was the only defense that "truly could have succeeded,"[1] and even if the type of PTSD defense offered now could have been presented in 1982, there is no reasonable probability that Blunt's diagnosis of temporal lobe disorder prejudicially "misdirected" the jury into finding Babbitt guilty. The fact remains that Dr. Blunt's testimony, while presenting an alternative theory, was favorable to Babbitt by presenting him as someone who was extremely psychologically disturbed.
 
 
 18
 As to the second point, the prosecution's argument that all psychiatric testimony is inherently unreliable did not depend on or become "invited" by Dr. Blunt's testimony. The prosecution could have presented such an argument-and the jury could have adopted it-whether or not Dr. Blunt testified.
 
 B. Penalty Phase
 1. Counsel's Performance
 
 19
 Babbitt also argues that his counsel's performance was ineffective during the penalty phase because counsel failed to investigate and present adequate mitigating evidence. Babbitt argues that counsel failed to conduct a minimally adequate investigation into Babbitt's family and life history. As in the guilt phase, Babbitt's penalty phase argument focuses on what evidence his counsel could have obtained rather than focusing on whether his counsel's investigative efforts were reasonable.
 
 
 20
 Babbitt claims that counsel failed to investigate and present potentially mitigating evidence related to Babbitt's tortured family history, his good deeds as a child, his learning disability, and his service in Vietnam (including the testimony of Vietnam veterans). Babbitt claims there was no strategic reason for excluding such evidence, citing counsel's own admission that, in hindsight, he did not adequately plan or research or investigate.
 
 
 21
 This court has held that counsel is ineffective during the penalty phase when he fails to conduct more than a cursory investigation of a defendant's background and makes no attempt to humanize him before the jury. Siripongs v. Calderon, 35 F.3d 1308, 1316 (9th Cir.1994) ("Siripongs I ").
 
 
 22
 However, in this case, counsel did far more than a mere cursory investigation. Counsel hired an experienced death penalty investigator who conducted a thorough investigation into Babbitt's history. Counsel stated that he took an aggressive approach to discovery and found every piece of relevant evidence regarding Babbitt's background that would bear on mitigation. Such evidence included Babbitt's family history, his trouble in school, his early head injuries and brain damage, his service in Vietnam, his drug use in Vietnam, his post-Vietnam hallucinations and nightmares, his attempted suicides, and his otherwise kind demeanor.
 
 
 23
 Furthermore, counsel did make a substantial attempt to humanize Babbitt before the jury. The evidence summarized above was presented to the jury during the penalty phase. The jury was also instructed that it could consider any mitigating evidence previously presented during the guilt and sanity phases. Counsel also presented a host of family members and other witnesses who offered additional mitigating evidence related to Babbitt's good character, including his sister, his nephew, his brother, his former mother-in-law, and his former father-in-law.
 
 
 24
 This case is therefore not even remotely similar to those where counsel completely failed to investigate or present mitigating evidence. See Clabourne v. Lewis, 64 F.3d 1373, 1386-87 (9th Cir.1995) (holding that counsel provided ineffective assistance when he "gave up" and failed to present mitigating evidence at the sentencing hearing); Mak v. Blodgett, 970 F.2d 614, 619 (9th Cir.1992) (holding that counsel provided ineffective assistance when he failed to present any humanizing evidence during the penalty phase and had no tactical reason for doing so).
 
 
 25
 Thus, Babbitt's counsel conducted a quite thorough investigation and certainly presented a constitutionally adequate penalty phase defense.
 
 2. Prejudice
 
 26
 Even if counsel's actions were deficient, Babbitt cannot show prejudice. Again, the evidence he now seeks to introduce is largely cumulative of the evidence actually presented during the penalty phase. Thus, there is no reasonable probability the jury would have changed its sentence in light of the new evidence. See Schaflander, 743 F.2d at 718; see also McDowell v. Calderon, 107 F.3d 1351, 1363 (9th Cir.1997) (holding that there was no reasonable probability that the jury would have chosen a different sentence upon introduction of additional evidence of sexual and substance abuse because the jury chose a sentence of death after hearing similar evidence of defendant's tragic childhood and severe physical abuse), amended and superceded in part by 116 F.3d 364 (9th Cir.1997), vacated in part by 130 F.3d 833 (9th Cir.1997) (en banc), cert. denied, --- U.S. ----, 118 S.Ct. 1575, 140 L.Ed.2d 807 (1998); cf. Williams v. Calderon, 52 F.3d 1465, 1471 (9th Cir.1995) (holding that defendant was not prejudiced by counsel's failure to present any additional mitigating evidence during the penalty phase because the jury was entitled under California law to consider the ample mitigating evidence presented during the guilt phase).
 
 C. Summary Judgment
 
 27
 Babbitt argues that the district court violated well-settled summary judgment principles in ruling as a matter of law that Babbitt failed to establish a prima facie case of counsel's ineffectiveness. He argues that the magistrate judge viewed the evidence and drew inferences in the State's favor, in contravention of the rule that required the magistrate judge to view the evidence in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 
 28
 First, Babbitt argues that the magistrate judge erroneously rejected the opinion of Dr. Marmar that Babbitt suffered from PTSD during his crimes. According to Dr. Marmar, the crimes occurred after a week of foggy Vietnam-like weather and after Babbitt had had contact with Asians. Dr. Marmar also claims that Babbitt's treatment of Leah Schendel's body-partially covering it with a mattress and placing a tea kettle atop her pubic area and attaching a leather strap to her ankle-was consistent with how Marines treated their dead comrades during battle in Vietnam. Babbitt argues that the magistrate judge erred by characterizing Dr. Marmar's new PTSD defense as "implausible" and cites Bulthuis v. Rexall Corp., 789 F.2d 1315, 1318 (9th Cir.1985) in support of the proposition that the district court cannot reject an expert's opinion merely because it disagrees with that opinion without first providing a hearing.
 
 
 29
 However, in this case, the magistrate judge was not rejecting the expert's opinion but merely stating that a jury would not have been swayed by that opinion for the purposes of establishing prejudice.[2] This court has specifically held that this is not a credibility determination but is an inherent part of deciding a Strickland claim on the merits during summary judgment. See Williams, 52 F.3d at 1484:
 
 
 30
 [Defendant] contends that the district court could only deny an evidentiary hearing if it made a credibility determination that [his] experts, who said he was suffering from diminished capacity, were not worthy of belief. However, in reviewing [defendant's] Strickland claim, we must ask, not whether [defendant] suffered from diminished capacity, but instead whether, taking the experts' testimony as true, introduction of the testimony of one of them 15 years ago might have made a difference. That latter question requires no credibility determinations....
 
 
 31
 Thus, the magistrate judge's recommendation granting summary judgment against Babbitt was proper and was not based upon impermissible credibility determinations.
 
 III
 
 32
 Babbitt argues that the district court abused its discretion by denying his alternative motion for an evidentiary hearing on his ineffective assistance claims. A habeas petitioner is entitled to an evidentiary hearing as a matter of right where the facts are disputed "if two conditions are met: (1) the petitioner's allegations would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Jones v. Wood, 114 F.3d 1002, 1010 (9th Cir.1997). Babbitt argues that this court has held that a petitioner in a capital case is entitled to an evidentiary hearing in federal court where there has been no state hearing and the petitioner "raises a 'colorable' claim of ineffective assistance" of counsel. See Siripongs I, 35 F.3d at 1314.
 
 
 33
 It is undisputed that there has never been a state hearing on Babbitt's claims. Therefore, the only question is whether Babbitt raises a "colorable" claim of ineffective assistance.
 
 
 34
 This court has held that Siripongs I "does not establish a per se rule requiring an evidentiary hearing whenever a petitioner has made out a 'colorable claim' of cause." Williams, 52 F.3d at 1484. Rather, a petitioner must establish that his allegation of ineffective assistance, if proven, would establish both deficient performance and prejudice. See Jones, 114 F.3d at 1010. This court has characterized Siripongs I, then, as holding merely that where a claim of deficient performance has been made out, it is "generally likely" that a hearing will be required on the issue of prejudice. See Williams, 52 F.3d at 1484.
 
 
 35
 In this case, Babbitt has not made out a colorable claim of either deficient performance or prejudice. Thus, the district court did not err in denying Babbitt an evidentiary hearing on his ineffective assistance claims.
 
 IV
 
 36
 Babbitt argues that the district court erred in rejecting his claim that the penalty phase jury was misled as to which factors were mitigating and which were aggravating. The Supreme Court has held that a defendant is entitled to have the jury consider as a mitigating factor "any aspect of a defendant's character or record and any circumstance of the offense that defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In order to satisfy this requirement, the penalty jury was instructed using the language of California Penal Code section 190.3, including subdivision (k), which provides that the jury shall consider "[a]ny other circumstance which extenuates the gravity of the crime though it is not a legal excuse for the crime."
 
 
 37
 Babbitt argues that this "unadorned" version of subdivision (k) was erroneous because the jury was not specifically told which factors it could consider as extenuating and was not informed of the definition of the term "extenuates." However, the Supreme Court has held that this instruction is neither erroneous nor ambiguous on its face. Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).
 
 
 38
 The Supreme Court held that the proper inquiry "is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Boyde, 494 U.S. at 380, 110 S.Ct. 1190. Under this "as applied" inquiry, Babbitt argues that the prosecutor misled the jury into considering Babbitt's background as an aggravating factor by making the statement: "you may consider any of that material concerning his character and background as an aggravating factor in determining what the punishment should be." Babbitt also argues that the prosecutor told the jury that his Vietnam service was not relevant as a mitigating factor by making the statement: "I want you to keep in mind that what we are doing here is attempting to assess the criminal responsibility of one Manuel Babbitt, and not his conduct in the Vietnam War."
 
 
 39
 Both of these "as applied" challenges fail to implicate errors of constitutional significance. The sole constitutional issue here is whether the jury was allowed to consider all relevant mitigating evidence. See Blystone v. Pennsylvania, 494 U.S. 299, 307, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) (holding that "[t]he requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence").
 
 
 40
 First, to the extent that Babbitt is arguing that the prosecutor's comments misled the jury into considering his background as aggravating rather than mitigating, his argument fails. Nothing in the Constitution limits the consideration of nonstatutory aggravating factors. See Barclay v. Florida, 463 U.S. 939, 956, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (holding that nothing in the Constitution prohibits consideration of non-statutory aggravating factor); Harris v. Pulley, 692 F.2d 1189, 1193-94 (9th Cir.1982) (rejecting the argument that California death penalty statute is unconstitutional because it places no limit on the introduction of aggravating factors), rev'd in part on other grounds, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).[3] Also, regarding the question of whether the trial court correctly followed state law defining mitigating and aggravating factors, this court is bound by the California Supreme Court's determination that there had been no violation of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); People v. Babbitt, 45 Cal.3d 660, 720-722, 248 Cal.Rptr. 69, 755 P.2d 253 (1988) (finding no violation of state law in this case).
 
 
 41
 Second, to the extent that Babbitt is arguing that the prosecutor tried to limit the jury's consideration of mitigating factors, his argument fails as well. The prosecutor did not tell the jury that it could not consider Babbitt's Vietnam experience as mitigating. The prosecutor merely stated that it should focus on the crime rather than on Vietnam. This statement was thus not meant "to contend that background and character were irrelevant, but to urge the jury that despite petitioner's past difficulties, he must accept responsibility for his actions." Boyde, 494 U.S. at 385, 110 S.Ct. 1190. As the magistrate judge (and the California Supreme Court) noted, the prosecutor himself informed the jury that it could consider the defendant's general background, character, and history as mitigating factors. Thus, the jury's consideration of mitigating evidence was in no way limited by the prosecutor's comments or by the trial judge's recital of the "unadorned" version of section 190.3(k).[4]
 
 V
 
 42
 Babbitt argues that the trial court deprived him of due process by failing to consider his mental illness as a mitigating factor in conducting its automatic review of the jury's death verdict. California law provides that after the jury's penalty verdict, the trial judge must conduct his own review of the evidence and determine "whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented." See Cal. Penal Code § 190.4(e). Section 190.4(e) also provides that the judge's review should be guided by the aggravating and mitigating circumstances in Cal. Penal Code § 190.3. Section 190.3(h) states that one of those circumstances is "whether or not at the time of the defense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the affects of intoxication."
 
 
 43
 Babbitt argues that the trial court erred when it ruled that "the defendant's capacity was not so impaired as to excuse his conduct." Babbitt argues that considering evidence of mental disease only if it rises to the level of a legal excuse violates the rule of Lockett v. Ohio, 438 U.S. at 604, 98 S.Ct. 2954, which held that the sentencer "not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death."
 
 
 44
 This argument is without merit. The trial judge merely stated that Babbitt's mental disease was not severe enough to excuse his conduct, which could have meant merely that he considered Babbitt's mental state (as did the jury) to be not severe enough of a mitigating factor to outweigh the aggravating factors in the case.[5] For the same reason we do not interpret ambiguous statements of a prosecutor in their most unconstitutional light, see Donnelly, 416 U.S. at 647, 94 S.Ct. 1868, we do not interpret ambiguous statements of the trial judge in their most unconstitutional light when a constitutionally sound interpretation is possible and no jury confusion is evident.
 
 CONCLUSION
 
 45
 We hold that Babbitt has shown neither deficient performance nor prejudice for his ineffective assistance claims and has failed to establish the need for an evidentiary hearing on those claims. We also find no reasonable likelihood that the penalty jury applied the judge's instructions in a way that would prevent the consideration of constitutionally relevant evidence. Finally, we hold that the trial court did not deprive Babbitt of due process by failing to consider his mental state as mitigating evidence during his state-mandated review.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 See infra, for a discussion of the problems with Babbitt's "new" version of a PTSD defense as offered by Babbitt's new expert, Dr. Marmar
 
 
 [2]
 The magistrate judge noted that no reasonable jury would have believed Babbitt's claim of memory loss or Babbitt's claim that he was drawn to Leah Schendel's apartment by symbols representing the Vietnam War. Both of these claims were contradicted by other evidence. There was evidence that Babbitt in fact had some memory of his crimes and that he had frequently lied in the past, which would have made his claimed memory loss during the crimes (which Dr. Marmar opines is evidence of a PTSD-disassociative state) inherently suspect. There is also evidence that Babbitt had previously been repelled-not drawn-by symbols of Vietnam, and that Babbitt had committed other crimes in a manner not consistent with a PTSD diagnosis
 
 
 [3]
 Of course, there are circumstances where a state may attach the "aggravating" label to "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant ... or to conduct that actually should militate in favor of a lesser penalty, such as perhaps the defendant's mental illness." See Zant v. Stephens, 462 U.S. 862, 885, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (citations omitted). Babbitt argues that the prosecutor's statement that the jury could consider his background and character as aggravating implicated such a constitutionally impermissible factor. However, even if a prosecutor's statement could rise to the level of a state-sanctioned aggravating factor, see Boyde, 494 U.S. at 384, 110 S.Ct. 1190 (noting that "arguments of counsel generally carry less weight with a jury than do instructions from the court" and should be "judged in the context in which they are made"), the prosecutor's statement in this case was vague and gave the jury no specific directive to consider any impermissible factor (such as mental illness) as aggravating. This court should not infer an unconstitutional directive from such ambiguous comments. See Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.")
 
 
 [4]
 This is also not a case where the jury expressed confusion about how to apply the mitigating and aggravating factors under 190.3(k) and the judge took inadequate steps to clear up that confusion. See McDowell v. Calderon, 130 F.3d 833 (9th Cir.1997) (en banc), cert. denied, --- U.S. ----, 118 S.Ct. 1575, 140 L.Ed.2d 807 (1998)
 
 
 [5]
 In the language of the Supreme Court, the judge may have merely evaluated the evidence and found it wanting as a matter of fact, rather than finding as a matter of law that he was unable even to consider the evidence. See Eddings v. Oklahoma, 455 U.S. 104, 113, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)