**Ronald L. SANDERS, Petitioner—
Appellant,**

v.

**Jill L. BROWN, Warden, of California
State Prison at San Quentin,\*
Respondent—Appellee.**

No. 01–99017.

United States Court of Appeals,
Ninth Circuit.

March 16, 2006.

---

\* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\* Jill R. Brown is substituted for her predecessor, Jeanne S. Woodford, as Warden of the California State Prison at San Quentin, pursuant to Fed. R.App. P. 43(c)(2).

Nina Rivkind, Esq., Berkeley, CA, for Petitioner—Appellant.

Eric E. Jorstad, Esq., Robert L. Collins, Esq., Faegre and Benson LLP, Minneapolis, MN, Jane N. Kirkland, DAG, Attorney General's Office, Sacramento, CA, for Respondent—Appellee.

Before: D.W. NELSON, KLEINFELD and FISHER, Circuit Judges.

## MEMORANDUM **

The Supreme Court partly reversed our prior decision in this case. *See Brown v. Sanders,* — U.S. ——, 126 S.Ct. 884, 163 L.Ed.2d 723 (2006). We now consider the remaining claims in Petitioner–Appellant Ronald L. Sanders' appeal of the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his conviction by jury trial for murder with special circumstances and his capital sentence. We reverse the district court's denial of an evidentiary hearing on Sanders' claim that his trial counsel, Frank Hoover, provided ineffective assistance by acquiescing in Sanders' request to forgo a penalty defense, and we remand so that the district court can conduct a hearing to determine the merits of this claim. We affirm the district court's denial of Sanders' other penalty-phase claims, which are without merit.

### I.

At Sanders' own request, no mitigating circumstances were presented to the jury in the penalty phase of his trial. The facts regarding Sanders' decision not to present evidence and Hoover's decision not to investigate are not fully developed in the record. Nevertheless, at some point during Hoover's representation, Sanders indicated that he did not wish to present evidence of mitigating circumstances because

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

"life without parole [was] unacceptable to him." Sanders told Hoover that he could not "accept [a life sentence] as an alternative whatsoever, and for that reason [did] not want [Hoover] to ask the jury for that alternative."

Because Sanders told Hoover that he did not want to present evidence arguing for a sentence of life without parole, Hoover performed "only a general investigation of [Sanders'] background and potentially mitigating circumstances." Hoover's declaration describes an investigation limited to a general interview with Sanders regarding his background; a review of some of Sanders' papers in a suitcase at his house, resulting in documents confirming Sanders' employment in Canada between 1976 and 1977 and with the Getty Oil Company; a telephone call that confirmed that Sanders' father was being treated in a hospital in January 1982 (Hoover did not interview Sanders' father or speak with him on the phone); identifying the whereabouts of certain family members, but conducting no interviews; and conducting some "witness location searches (but not interviews)" for Sanders' prior crimes in 1970.

Other than these activities, Hoover conducted no investigation into potential mitigating circumstances: he did not hire an expert, interview any person other than Sanders or substantively investigate Sanders' background. In his declaration, Hoover has itemized many facts about Sanders he did not know, investigate, discuss with Sanders or present to the jury. Hoover informed the trial court that he explained to Sanders only the "basic tenets of what [mitigating] evidence would consist of."

When the trial court began the penalty phase of Sanders' trial, the prosecution introduced evidence of aggravating factors in the form of Sanders' involvement in five armed robberies in 1970, and offered no evidence of mitigating factors.

Subsequent research by Sanders' attorneys has revealed substantial mitigating evidence. Most of this involves Sanders' life history and family background. From this, Sanders argues that he could have presented evidence that he suffered extensive abuse and mistreatment, particularly from his father, and that he grew up in a household with severe domestic violence; that his mother was clinically depressed; that there was a history of neglect, substance abuse, pervasive poverty and transience in the family; that Sanders' sister died as a result of drug abuse; that Sanders spent time in several youth detention centers, in addition to time in prison for armed robbery; that he served in the Army, although he was later honorably discharged for having enlisted under the age of 18; and that after his imprisonment for armed robbery conviction, he was successfully employed, married and receiving good reports from his probation officers. Sanders also argues that an investigation would have revealed evidence mitigating his robbery conviction, including the fact that he was heavily intoxicated at the time and was fully cooperative with police.

Significantly, Sanders contends that an investigation into mitigating circumstances would have also brought forth evidence that he was easily persuaded and had difficulty making major decisions on his own. For example, Sanders underwent a psychiatric evaluation that revealed he "performed poorly on tasks which required complex or divided attention"; that he had "cognitive inflexibility, that is, he was unable to use error feedback to modify his problem solving approach"; that he was diagnosed with attention deficit disorder; and that he suffered post-natal complications. Reports from prison psychiatrists and counselors suggested that Sanders

was "a weak, emotionally immature person with dependency needs who was easily influenced in the past," and that he was "easily led by peers."

Despite the availability of such mitigating evidence—a fact the State does not contest—Sanders' counsel discovered none of it. If he had, he might have used it to persuade Sanders to change his mind about his decision, and the mitigating evidence could have been presented to the jury. Hoover has declared to the district court that he had no tactical reason or justification for having failed to investigate Sanders' background properly.

## II.

Sanders argues that his claim of ineffective assistance entitles him to an evidentiary hearing, and, in the alternative, that we should find ineffective assistance on the facts presented.

"A petitioner in a capital case is entitled to an evidentiary hearing where there has been no state court evidentiary hearing and the petitioner raises a 'colorable' claim of ineffective assistance." *Siripongs v. Calderon*, 35 F.3d 1308, 1314 (1993); *see also Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir.2004). Alleging a colorable claim for relief is a "relatively 'low bar.'" *Landrigan v. Schriro*, 441 F.3d 638, 650 (9th Cir.2006) (en banc) (quoting *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005)). The parties agree that there was no state evidentiary hearing on Hoover's alleged ineffective assistance. Consequently, the remaining question is whether Sanders has raised a colorable claim of ineffective assistance, i.e., whether his allegations, if proved, would entitle him to relief.

In order to demonstrate ineffective assistance, a petitioner must satisfy the two-part test in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984), by showing that the trial counsel's performance was deficient and that counsel's deficiencies "'undermine confidence in the outcome' of the proceeding." *Landrigan*, 441 F.3d at 643 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Thus, in order to receive an evidentiary hearing, Sanders must make factual allegations that, if proven, would satisfy the *Strickland* test. Sanders may not assert merely conclusory statements unsupported by any proof or offer of proof. *See Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir.2001). We review both prongs of the *Strickland* test de novo. *See Silva v. Woodford*, 279 F.3d 825, 837 (9th Cir.2002).

Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. "[A]n attorney's failure to investigate, during either the guilt phase or the sentencing phase, can amount to constitutionally deficient performance." *Silva*, 279 F.3d at 842 (citing numerous Ninth Circuit cases); *Douglas v. Woodford*, 316 F.3d 1079, 1088 (9th Cir.2003) ("When it comes to the penalty phase of a capital trial, '[i]t is imperative that all relevant mitigation information be unearthed for consideration.'") (quoting *Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir.1999) (emphasis added)). The Supreme Court has itself stated that the central question "is not whether counsel should have presented a mitigation case," but "whether the investigation supporting counsel's decision not to introduce mitigating evidence ... *was itself reasonable.*" *Wiggins v. Smith*, 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (original emphasis); *Karis v. Calderon*, 283 F.3d 1117, 1134–35 (9th Cir.2002) (finding duty to investigate potential witnesses for penalty phase even where trial counsel believed such witnesses would be uncoop-

erative). An attorney has a duty "to develop and present mitigating evidence, even when dealing with capital defendants who are 'uninterested in helping or 'even actively obstructive' in developing a mitigation case.'" *Landrigan*, 441 F.3d at 642 (quoting *Rompilla v. Beard*, — U.S. —, — – —, 125 S.Ct. 2456, 2462–63, 162 L.Ed.2d 360 (2005)).

To determine whether the investigation was reasonable, the court "must conduct an objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins*, 539 U.S. at 523, 123 S.Ct. 2527 (internal citation and quotation marks omitted). In this investigation, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. "[C]ounsel is not deficient for failing to find mitigating evidence if, *after a reasonable investigation*, nothing has put the counsel on notice of the existence of that evidence." *Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998).

Here, the question is whether Hoover's decision not to conduct a reasonable investigation could have constituted ineffective assistance, i.e., whether Sanders' insistence—the rationality of which Hoover at times questioned—that he did not want to present a penalty defense excused Hoover from fulfilling his duty to conduct a thorough investigation.[1]

"A defendant's insistence that counsel not call witnesses at the penalty phase does not eliminate counsel's duty to investigate mitigating evidence or to advise the defendant of the potential consequences of failing to introduce mitigating evidence, thereby assuring that the defendant's decision regarding such evidence is informed and knowing." *Williams v. Woodford*, 384 F.3d 567, 622 (9th Cir.2004). At the same time, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions," *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. Nevertheless, we have held that:

> in most circumstances a lawyer may rely on his client's decision against presenting mitigating evidence only after completing an appropriate investigation and only where the client's decision is "informed and knowing." *Williams v. Woodford*, 306 F.3d 665, 720 (9th Cir. 2002) ("A defendant's insistence that counsel not call witnesses at the penalty phase does not eliminate counsel's duty to investigate mitigating evidence or to advise the defendant of the potential consequences of failing to introduce mitigating evidence, thereby assuring that the defendant's decision regarding such evidence is informed and knowing."). *See Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("Trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background." (citing 1 ABA Standards for Criminal

---

1. Because the issue is whether the failure to investigate (and not the decision *not* to present mitigating evidence) constituted ineffective assistance, the State's argument that *Jeffries v. Blodgett*, 5 F.3d 1180, 1197–98 (9th Cir.1993), controls this case is not correct. In *Jeffries*, we rejected the petitioner's claim of ineffective assistance from his counsel's failure to put on any mitigating evidence, at the client's own directive. Failure to investigate was not raised as an issue, and we noted specifically that Jeffries' counsel had been prepared to present a mitigation defense. *Id.* at 1197.

Justice 4–4.1 cmt. at 4–55 (2d ed.1980))); *Silva*, 279 F.3d at 840 ("While not directly addressing a situation where a client purportedly seeks to prohibit an attorney from investigating his background, these guidelines suggest that a lawyer's duty to investigate is virtually absolute, regardless of a client's expressed wishes." (citing 1 ABA Standards for Criminal Justice 4–4.1 cmt. at 4–55 (2d ed.1980))).

*Stankewitz*, 365 F.3d at 722.

Thus, despite the need to look at particular facts and circumstances, our cases establish that counsel has a duty to investigate mitigating circumstances in a capital case even when his client has indicated that he does not want to present such evidence to a jury.

> [C]ounsel's duty to investigate mitigating evidence is neither entirely removed nor substantially alleviated by his client's direction not to call particular witnesses to the stand.... [A] lawyer who abandons investigation into mitigating evidence in a capital case at the direction of his client must at least have adequately informed his client of the potential consequences of that decision and must be assured that his client has made informed and knowing judgment.

*Silva*, 279 F.3d at 838; *see also Summerlin v. Schriro*, 427 F.3d 623, 637–39 (9th Cir.2005) (spontaneous objection to presentation of one witness does not excuse failure to present penalty-phase defense); *Stankewitz*, 365 F.3d at 721–22 (opposition to calling family members or experts as witnesses does not excuse attorney from interviewing experts and family members to obtain mitigating evidence).

The 1980 ABA Guidelines, which were in effect at the time of the penalty phase both in *Silva* and in Sanders' trial, "suggest that a lawyer's duty to investigate is virtually absolute, regardless of a client's expressed witness." *Id.* at 840 (citing 1 ABA

Standards for Criminal Justice 4–4.1 cmt. at 4–55 (2d. ed 1980)). Although these standards are "only guides" and "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms," *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, both *Silva* and the Supreme Court have relied on the ABA Guidelines to find ineffectiveness for failure to investigate. *See Silva*, 279 F.3d at 840; *Rompilla*, 125 S.Ct. at 2466; *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *See also Stankewitz*, 365 F.3d at 722.

The cases relied on by the State, *Hayes v. Woodford*, 301 F.3d 1054, 1067 (9th Cir. 2002), and *Landrigan v. Stewart*, 272 F.3d 1221 (9th Cir.2001), have since been vacated and reversed by the en banc court. *See Hayes v. Woodford*, 382 F.3d 920 (9th Cir. 2004); *Hayes v. Brown*, 399 F.3d 972 (9th Cir.2005) (en banc); *Landrigan v. Stewart*, 397 F.3d 1235 (9th Cir.2005); *Landrigan v. Schriro*, 441 F.3d 638 (9th Cir.2006) (en banc). Moreover, the en banc court's decision in *Landrigan*, which controls this case, establishes that Sanders has presented a colorable claim that Hoover's performance was deficient. Like Landrigan's counsel, *see Landrigan*, 441 F.3d at 643 Hoover had a general duty to investigate, which was not eliminated by Sanders' opposition to presenting evidence during the penalty phase. The record does not show that Sanders instructed Hoover *not* to conduct an investigation. To the contrary, Hoover made some superficial attempts at a preliminary investigation, and his decision not to investigate further appears to have been entirely his own. Additionally, and significantly, Hoover did not know any additional facts about Sanders' background or his family that could have helped him to inform Sanders fully about the possibility and modes of presenting mitigating evidence. Finally, a thorough investigation into Sanders' background would have better prepared Hoover to persuade Sanders

that a penalty-phase defense was necessary. Accepted as true, Sanders' non-conclusory allegations could prove that Hoover had a general duty to investigate, even in the face of Sanders' desire not to present mitigating evidence to the jury; that Hoover did not discharge this duty; and that Sanders was not adequately informed about the consequences of forgoing penalty-phase evidence before making his decision.

In order to be entitled to an evidentiary hearing, however, Sanders must also present facts that, if proved, could establish that he was prejudiced by Hoover's failure to investigate. *Siripongs,* 35 F.3d at 1323. "To establish prejudice, [Sanders] must demonstrate a reasonable probability that [Hoover's] deficiencies undermine confidence in the outcome of the proceeding." *Landrigan,* 441 F.3d at 648. Sanders argues that if Hoover had performed an investigation, there is a reasonable probability that he would have changed his mind and allowed mitigating evidence to be presented, evidence that could reasonably have changed the jury's decision to impose the death penalty.

The facts of Sanders' opposition to presenting mitigating evidence are not entirely clear on this record—hence the need for an evidentiary hearing—and there is considerable uncertainty as to when and how Sanders expressed his decision not to proceed. Only one week passed between the moment the trial court was made aware of Sanders' decision not to present mitigating evidence and the beginning of the penalty phase. The trial court refused to grant Hoover's request for a continuance when Hoover asked for a "reasonable time" to persuade Sanders to change his mind. At the beginning of the penalty phase, a second attorney, appointed by the court to discuss matters with Sanders, stated that there "may be some ambivalence" in Sanders' position. Sanders himself expressed a desire to speak with a psychiatrist and a lawyer about his decision, and, according to Hoover, had suffered from the pressure of the verdict, which made it possible that Sanders was not "himself." Although a psychiatrist discussed Sanders' decision with him, there is no record of what the psychiatrist told Sanders or Hoover or of the nature of the interaction between Hoover and the psychiatrist. Thus, we have little evidence as to how adamant Sanders' refusal was and little evidence that a background investigation by Hoover would have failed to change Sanders' mind. Sanders' "purported objection to mitigating evidence appears not to have been 'informed and knowing' because there is no evidence that [his counsel] conducted an adequate investigation." *Stankewitz,* 365 F.3d at 722.

Moreover, when we weigh the mitigating evidence Sanders could have presented against the prosecution's reliance on aggravating circumstances arising from Sanders' participation in robberies in 1970, we conclude that Hoover's deficient performance undermines our confidence in the outcome of the proceedings. *See Landrigan,* 441 F.3d at 648. "If true, [Sanders'] allegations are the very sort of mitigating evidence that might well have influenced the [jury's] appraisal of [Sanders'] moral culpability. Evidence regarding social background and mental health is significant, as there is a belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional or mental problems, may be less culpable than defendants who have no such excuse." *Id.* at 649 (internal citations and quotation marks omitted). "Even in cases involving particularly heinous murders, or substantial criminal histories, a defendant can be prejudiced by an attorney's failure to investigate and present mitigating evidence that could influence the [jury's] appraisal of moral culpability." *Id.* at 649–50 (citing

*Williams v. Taylor,* 529 U.S. 362, 398, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Stankewitz,* 365 F.3d at 724).

"Having reviewed the affidavits and the record as a whole, and guided by ... recent United States Supreme Court cases emphasizing counsel's duty to investigate and present mitigating evidence, we conclude that [petitioner] has raised a colorable claim of ineffective assistance of counsel during the penalty phase of the trial." *Stankewitz,* 365 F.3d at 708; *see Silva,* 279 F.3d at 843 (citing numerous cases finding ineffective assistance for failure to investigate). We do not opine on the district court's ultimate resolution of this issue. Accordingly, we REVERSE the district court's denial of an evidentiary hearing on Sanders' ineffective assistance claim and REMAND for an evidentiary hearing, and we AFFIRM the district court's denial of Sanders' other penalty-phase claims.

\* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.